IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02244-PAB-MDB

SARAH GLENN, an individual,

    Plaintiff,

v.

THE CITY OF FLORENCE, a municipal corporation,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Fourth Claim for Relief [Docket No. 66]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND**[1]

On September 22, 2020, plaintiff Sarah Glenn began working for defendant City of Florence (the "City"). Docket No. 58 at 2, ¶ 8. Ms. Glenn worked at the Florence Water Treatment Plant (the "Plant") as a "Small Systems Certified Water Plant Operator." *Id*., ¶ 10. Brandon Harris was the City's operator in charge of the Plant and was Ms. Glenn's direct supervisor. *Id*., ¶¶ 11-12. Throughout Ms. Glenn's employment, she was the only female employee at the Plant. *Id*., ¶ 13. Ms. Glenn's "required morning routine" included checking on the operations and security of the public swimming pool. *Id*. at 6, ¶ 55.

---

[1] The following facts are taken from plaintiff's amended complaint, Docket No. 58, and are presumed to be true for the purpose of ruling on defendant's motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

In October 2020, Mr. Harris used equipment and construction materials owned by the City for his personal use. *Id*. at 3, ¶ 22. That same month, Mr. Harris asked Ms. Glenn to perform work for his personal benefit during work hours and Ms. Glenn declined to perform the work. *Id*., ¶¶ 23-24. At a November 2020 meeting with Ms. Glenn's co-workers, Mr. Harris made a sexual gesture towards Ms. Glenn. *Id*., ¶ 25. On March 22, 2021, Ms. Glenn met with Mr. Harris and the City Manager to discuss her concerns over disparate treatment based on sex, including that she was required to spend excessive amounts of time cleaning while her male peers spent more time on high-level water operator work. *Id*. at 5, ¶ 41.

On August 23, 2021, Ms. Glenn filed a formal complaint with the Colorado Department of Public Health and Environment ("CDPHE") about Mr. Harris' conduct. *Id*. at 6, ¶ 52. On August 25, 2021, Ms. Glenn wrote to the City's Mayor, Dick Upton, to "address concerns about, among other things, differential treatment of male employees, and matters of public concern, including Mr. Harris authorizing excessive, no-bid repair expenditures, water quality compliance issues, and a co-employee speeding in a City vehicle." *Id*., ¶ 53. On September 5, 2021, Ms. Glenn "emailed City Council to complain about, among other things, Mr. Harris's use of City equipment for his own benefit, his misappropriation of City property, his allowing a male employee with a poor safety record to operate heavy equipment, and her disparate treatment." *Id*., ¶ 54.

On September 28, 2021, the City's interim human resources director contacted the interim City Manager about engaging the Employers Council to investigate Ms. Glenn's alleged discriminatory treatment and Mr. Harris's use of City equipment and materials for his personal benefit. *Id*. at 7, ¶ 61.

2

On October 18, 2021, Ms. Glenn posted the results of her pre-employment drug test at the Plant in order to protect her reputation "in response to false rumors and inuendo about her alleged drug use and mental health." *Id*., ¶¶ 65-66.  On October 22, 2021, the City placed Ms. Glenn on administrative leave.  *Id*. at 8, ¶ 68.  The City's "ostensible reason" for placing Ms. Glenn on leave was that Ms. Glenn had posted the results of her pre-employment drug test.  *Id*.  However, the City had no policy prohibiting Ms. Glenn from posting these materials.  *Id*. at 7, ¶ 67.  On March 15, 2022, the City Manager offered to reinstate Ms. Glenn to active employment at the Plant, but with a work schedule that he knew was impossible given her childcare obligations.  *Id*. at 9-10, ¶¶ 77-78.  Ms. Glenn could not accept the offer, and her employment with the City ended on March 15, 2022.  *Id*. at 2, 10, ¶¶ 9, 80.

Ms. Glenn asserts four claims against the City: (1) a claim for discrimination based on sex under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a claim for retaliation under Title VII; (3) a claim for discrimination and retaliation in violation of the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-402; and (4) a First Amendment retaliation claim under 42 U.S.C. § 1983.  *Id*. at 10-12.  The City filed a motion to dismiss Ms. Glenn's fourth claim pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 66.  Ms. Glenn filed a response, Docket No. 69, and the City filed a reply.  Docket No. 81.

II.     **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

"[P]ublic employees do not surrender *all* their First Amendment rights by reason of their employment." *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). Rather, "the First Amendment protects a public employee's right . . . to speak as a citizen addressing matters of public concern." *Id*. (quoting *Garcetti*, 547 U.S. at 417). "The government employer, however, also has a 'countervailing interest in controlling the operation of its workplaces.'" *Id*. (quoting *Lane v. Franks*, 573 U.S. 228, 236 (2014)). "The problem in any case is to arrive at a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*. (quoting *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968) (internal alterations omitted)).

"In striking this balance, the First Amendment prohibits public employers from taking adverse action against employees because of their protected speech." *Id*. at 945. "To determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment, [courts] apply the *Garcetti/Pickering* test." *Id*. (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014); *Garcetti*, 547 U.S. at 421; *Pickering*, 391 U.S. at 568); *see also Joritz v. Gray-Little*, 822 F. App'x 731, 738 (10th Cir. 2020) (unpublished); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2424 (2022). The *Garcetti/Pickering* test has five elements:

1. The protected speech was not made pursuant to an employee's official duties.
2. The protected speech addressed a matter of public concern.

5

3. The government's interests as an employer did not outweigh the employee's free-speech interests.

4. The protected speech was a motivating factor in the adverse employment action.

5. The defendant would not have made the same employment decision in the absence of the protected speech.

*Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018) (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)); *see also Joritz*, 822 F. App'x at 738; *Knopf*, 884 F.3d at 945; *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf*, 884 F.3d at 945 (quoting *Trant*, 754 F.3d at 1165). The City argues that Ms. Glenn has failed to allege the first three elements of the *Garcetti/Pickering* test. Docket No. 66 at 5.

### A. Whether the Speech was Made Pursuant to Ms. Glenn's Official Duties

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Lincoln*, 880 F.3d at 538 (quoting *Garcetti*, 547 U.S. at 421). The Tenth Circuit has "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Knopf*, 884 F.3d at 945 (quoting *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010)). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id*. (quoting *Lane*, 573 U.S. at 240). "If the speech involves 'the type of activities that the employee was paid to do,' then it falls within the scope of an

employee's duties." *Id*. (internal alterations omitted) (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 800-01 (10th Cir. 2007)).  However, "[m]erely because an employee's speech was made at work and about work does not necessarily remove that employee's speech from the ambit of constitutional protection."  *Wright v. Kay Cnty. Just. Facilities Auth*., 2023 WL 2822122, at *5 (10th Cir. Apr. 7, 2023) (unpublished) (quoting *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008)).

There are no "bright line rules" in determining whether speech falls within the scope of an employee's duties.  *Knopf*, 884 F.3d at 945 (citation omitted).  Courts can consider several relevant, non-dispositive facts, including the tasks in an employee's job description, the frequency an employee performs a task, the subject of the employee's speech, the recipient of the employee's speech, and the legal obligation for the employee to speak.  *Id*. at 945-46 (citing *Brammer-Hoelter v. Twin Peaks Charter Acad*., 492 F.3d 1192, 1203 (10th Cir. 2007) (job description is not dispositive); *Holub v. Gdowski*, 802 F.3d 1149, 1156 (10th Cir. 2015) (frequency of performance is not dispositive); *Lane*, 573 U.S. at 239 (speech made about work is not dispositive); *Rohrbough v. Univ. of Colorado Hosp. Auth*., 596 F.3d 741, 747 (10th Cir. 2010) (speech made outside chain of command is not dispositive)).  Courts must "take a practical view of all the facts and circumstances surrounding the speech and the employment relationship."  *Id*. at 946 (citation omitted).  "Ultimately, [courts] ask whether the employee was performing the task they were paid to perform when they spoke."  *Id*. (internal alterations, quotations, and citation omitted).  If so, the "speech was therefore commissioned by his employer," and the speech "enjoys no First Amendment protection."  *Id*. (citation omitted).

The City argues that Ms. Glenn's speech was made pursuant to her official duties, including her reports about safety issues, her reports about disparate treatment based on sex, her letter to Mayor Upton, and her email to the City Council. Docket No. 66 at 7-8. The City cites *Pead v. Ephraim City*, 2018 WL 6573128, at *2-4 (D. Utah Dec. 13, 2018), in support of its argument. *Id*. at 8-9. Ms. Glenn responds that her speech was not made pursuant to her official duties. Docket No. 69 at 2. Ms. Glenn asserts that her employment as a water plant operator did not involve any responsibility for reporting criminal activity. *Id*.

The Court finds that Ms. Glenn has plausibly alleged the first element of the *Garcetti/Pickering* test. The amended complaint states that Ms. Glenn was a Small Systems Certified Water Plant Operator at the Plant. Docket No. 58 at 2, ¶ 10. Ms. Glenn's direct supervisor was Mr. Harris. *Id*., ¶ 12. Ms. Glenn's "required morning routine" included checking on the operations and security of the public swimming pool. *Id*. at 6, ¶ 55. On August 25, 2021, Ms. Glenn wrote to Mayor Upton to report Mr. Harris' authorization of "excessive, no-bid repair expenditures." *Id*., ¶ 53. On September 5, 2021, Ms. Glenn emailed the City Council to report Mr. Harris' use of City equipment for his own benefit and his misappropriation of City property. *Id*., ¶ 54.

In the context of reporting misconduct, the Tenth Circuit has held that two factors "suggest an employee was speaking as a private citizen rather than pursuant to her job responsibilities: (1) the employee's job responsibilities did not relate to reporting wrongdoing and (2) the employee went outside the chain of command when reporting the wrongdoing." *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1135-36 (10th Cir. 2010). The amended complaint does not allege that the ordinary

duties of a Small Systems Certified Water Plant Operator include reporting misappropriation of City property or authorization of excessive expenditures.  Ms. Glenn went over her direct supervisor in order to report Mr. Harris' alleged wrongdoing to Mayor Upton and the City Council.  Docket No. 58 at 6, ¶¶ 53-54.  Accordingly, the Court finds that Ms. Glenn has adequately alleged that this speech was not made pursuant to her official duties.  *See Reinhardt*, 595 F.3d at 1136-37 (holding that employee's act of filing an Individuals with Disabilities Education Act ("IDEA") complaint with the state agency was not made pursuant to her official duties because the employee had no responsibility for ensuring the school's IDEA compliance and the employee went beyond her "direct chain of command" to report the issue); *Wright*, 2023 WL 2822122, at *5-7 (holding that employee's speech – reporting noncompliance with prison standards – was not made pursuant to her official duties because the employee "went beyond her supervisors and reported to someone outside her chain of command about a matter which was not committed to her care") (emphasis omitted).[2]  As a result, Ms. Glenn has plausibly alleged the first element of the *Garcetti/Pickering* test.

## B. Whether the Speech was on a Matter of Public Concern

"Matters of public concern are those of interest to the community, whether for social, political, or other reasons."  *Joritz*, 822 F. App'x at 738 (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir. 2012)).  "Speech that pertains to a public agency's discharging its governmental responsibilities ordinarily will be regarded as

---

[2] The Court finds that the City's cited case, *Pead*, is distinguishable.  In *Pead*, the district court found that a police officer's speech, reporting his supervisor's illegal misconduct, was within the officer's official duties because police officers are paid to investigate, prevent, and report criminal conduct.  *Pead*, 2018 WL 6573128, at *4.  Here, there are no allegations suggesting that a water plant operator is paid to report misconduct regarding City property or resources.  Accordingly, *Pead* is not on point.

speech on a matter of public concern." *Id*. (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996)). However, "speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." *Id*. (quoting *David*, 101 F.3d at 1355). In distinguishing between these two types of speech, the Tenth Circuit directs courts to "consider the speaker's motivation: Was the speech calculated to redress personal grievances or did it have some broader public purpose?" *Id*. (quoting *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1228 (10th Cir. 2014)). Courts should examine "the content, form, and context of a given statement, as revealed by the whole record." *Id*. (quoting *Morris*, 666 F.3d at 661). When examining the context and form of the speech, courts must determine whether the "employee's *primary* purpose was to raise a matter of public concern." *Rogers v. Riggs*, 71 F.4th 1256, 1261-62 (10th Cir. 2023) (quoting *Singh v. Cordle*, 936 F.3d 1022, 1035 (10th Cir. 2019)).

The City argues that Ms. Glenn's speech was not on a matter of public concern because her speech involved "dissatisfaction with her work environment" and "ongoing criticism of her supervisor." Docket No. 66 at 9-10. Ms. Glenn asserts that her speech involved matters of public concern because she was reporting wrongdoing and misappropriation of public property occurring within her department. Docket No. 69 at 6. Ms. Glenn argues that the City mischaracterizes her speech as mere dissatisfaction with her work environment and criticism of her supervisor, which ignores her repeated attempts to share her concerns with the City Council and Mayor Upton regarding corruption and misappropriation of City property. *Id*. at 7.

In considering the content, form, and context of Ms. Glenn's speech, the Court finds that Ms. Glenn has plausibly alleged that her speech addressed a matter of public concern.  The content of Ms. Glenn's speech involved disclosing potential illegal conduct by her supervisor, including Mr. Harris' use of City equipment for his own benefit; misappropriation of City property; and authorization of excessive, no-bid repair expenditures.  *See* Docket No. 58 at 6, ¶¶ 53-54.  "Speech concerning potential illegal conduct by government officials is inherently a matter of public concern." *Brammer-Hoelter*, 492 F.3d at 1206; *see also Butler v. Bd. of Cnty. Comm'rs for San Miguel Cnty.*, 920 F.3d 651, 656 (10th Cir. 2019) ("statements revealing official impropriety usually involve matters of public concern." (quoting *Trant*, 754 F.3d at 1165)); *Eisenhour*, 744 F.3d at 1228 ("Speech involves a public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety, or other malfeasance within a governmental entity." (internal quotations, alterations, and citation omitted)); *Rogers*, 71 F.4th at 1260 ("a public concern usually exists when the speech exposes . . . corruption in a public workplace.").  The form and context of Ms. Glenn's speech, written communications to Mayor Upton and the City Council, are consistent with the conclusion that Ms. Glenn's speech regarding official misconduct involves a matter of public concern.  *See Lane*, 573 U.S. at 241 (concluding that the form and context of the employee's speech, namely, testimony in a judicial proceeding, fortified the conclusion that the employee's testimony about "corruption in a public program and misuse of state funds" was a matter of public concern).  At this stage, there are no allegations indicating that Ms. Glenn's primary purpose in reporting Mr. Harris' conduct was to address

11

personal grievances, rather than disclose governmental misconduct. Accordingly, the Court finds that Ms. Glenn has plausibly pled the second element of the *Garcetti/Pickering* test.

### C. Whether the City's Interests are Sufficient to Outweigh Ms. Glenn's Free Speech Interests

"When a public employee speaks as a citizen on a matter of public concern, a court next examines whether the government had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Helget*, 844 F.3d at 1222 (internal quotations and citations omitted). "The only public employer interest that outweighs the employee's free speech interest is avoiding direct disruption, *by the speech itself*, of the public employer's internal operations and employment relationships." *Id*. (internal quotations and citation omitted). In balancing the interests of the employee and the government, the Court can consider factors such as whether the speech: (1) impairs discipline by superiors or harmony among co-workers; (2) has a detrimental impact on close working relationships where loyalty and confidence are necessary; or (3) impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Id*.

The "primary consideration" of the third step of the *Garcetti/Pickering* test is the "impact of the disputed speech on the effective functioning of the public employer's enterprise." *Id*. (internal quotations and citation omitted). "A public employer need not show that the employee's speech *in fact* disrupted internal operations and employment relationships," but, rather, the public employer only needs to show that "the speech could *potentially* become so disruptive to the employer's operations as to outweigh the

12

employee's interest in the speech." *Id*. (internal quotations, alterations, and citations omitted). "A public employer's burden to justify its restriction on speech 'increases in proportion to the value of that speech in the public debate.'" *Id*. (quoting *Curtis v. Okla. City Pub. Sch. Bd. of Educ.*, 147 F.3d 1200, 1213 (10th Cir. 1998)). Where "the employee is acting as a whistleblower, exposing government corruption, his or her interest is entitled to greater weight." *Id*. at 1223 (citation omitted). "When an employee refuses to take advantage of internal channels, however – *i.e.*, by airing grievances outside the department – an employee's interest may be diminished when the chosen form of speech is 'unnecessarily disruptive.'" *Id*. (citation omitted).

The City argues that it has an "interest in avoiding direct disruption, by the speech itself, of the public employer's internal operations and employment relationships." Docket No. 66 at 12. Ms. Glenn responds that the City provided no examples of how her speech disrupted the City's internal operations or employment relationships. Docket No. 69 at 8. Ms. Glenn argues that the City's interests are outweighed by her free speech interests in disclosing governmental misconduct. *Id*.

The Court finds that, at the pleading stage, the City has not shown that its interests outweigh Ms. Glenn's free speech interests. The amended complaint contains no allegations suggesting that Ms. Glenn's reports to the City Council or the Mayor could disrupt the City's internal operations or working relationships. Ms. Glenn's free speech interest is "entitled to greater weight" given that she was "acting as a whistleblower, exposing [potential] government corruption." *See Helget*, 844 F.3d at 1223.

Accordingly, the Court finds that Ms. Glenn has plausibly alleged the first three elements of the *Garcetti/Pickering* test.[3]  Because the City does not challenge the fourth and fifth elements of the *Garcetti/Pickering* test, the Court will not evaluate those elements.

## IV.     CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Fourth Claim for Relief [Docket No. 66] is **DENIED**.

DATED October 23, 2023.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

---

[3] In her response, Ms. Glenn states that if the Court is inclined to grant the City's motion to dismiss, the Court should permit Ms. Glenn to amend her complaint to include an additional allegation that Ms. Glenn raised the issue of Mr. Harris' illegal conduct at a public City Council meeting on February 7, 2022.  Docket No. 69 at 4 n.1.  Ms. Glenn submitted a declaration regarding her speech at the City Council meeting.  Docket No. 69-1.  In reply, the City submitted an audio recording of the City Council meeting, *see* Docket No. 81-1, and requests that the Court consider the audio recording if the Court accepts Ms. Glenn's declaration.  Docket No. 81 at 5 n.3.  Pursuant to the Local Rules, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  The Local Rules also require a party seeking to file an amended pleading to attach the proposed amended pleading to her motion.  D.C.COLO.LCivR 15.1(b).  Because Ms. Glenn failed to file a motion, the Court denies Ms. Glenn's request to amend her complaint.  *See Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggests she should be allowed to amend if the court concludes her pleadings are infirm." (internal quotations, alterations, and citation omitted)).